**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

**BENJAMIN GILL** | **DOCKET NO.: 13-589**

**VERSUS**

**COASTAL DRILLING COMPANY, LLC.** | **MAGISTRATE PATRICK J. HANNA**

---

**PLAINTIFF, BENJAMIN GILL'S MEMORANDUM IN OPPOSITION TO DEFENDANT, COASTAL DRILLING COMPANY, LLC'S MOTION TO DISMISS PLAINTIFF'S CLAIM FOR UNREASONABLE, ARBITRARY AND CAPRICIOUS FAILURE TO PAY MAINTENANCE AND/OR CURE**

---

**MAY IT PLEASE THE COURT;**

**NOW INTO COURT**, through undersigned counsel, comes Plaintiff, Benjamin Gill, who files the present Memorandum in Opposition to the Motion to Dismiss of Defendant, Coastal Drilling Company, LLC. ("Coastal"), seeking summary dismissal of plaintiff's claims for bad faith penalties, sanctions and/or attorneys fees due to Coastal's arbitrary and capricious failure to timely make the required maintenance and cure benefit payments to or on behalf of plaintiff. For the reasons that follow, Coastal's motion should be denied in its entirety.

In bringing the present motion, Coastal insists that its handling of its maintenance and cure obligation towards plaintiff was at all times reasonable and dictated by developments as they were revealed pursuant to Coastal's investigation.

First, plaintiff is not asserting punitive damages for Coastal's actions as it relates to the payment of maintenance. Plaintiff only opposes Coastal's Motion for Summary Judgment as it relates to the payment of cure.

In its motion, Coastal insists that it at no time unreasonably delayed or denied any necessary medical treatment which would have resulted in an aggravation or worsening of plaintiff's condition, or adversely affected plaintiff's response to medical treatment. However, this is not the case. Throughout the course of plaintiff's treatment, the diagnostic and other recommendations of plaintiff's physicians were routinely denied or delayed resulting in a worsening in plaintiff's condition, or, at least, delayed therapeutic results. As this Court will recall, there have been a number of telephone conferences wherein the delay or refusal of Coastal to approve plaintiff's medical treatment was discussed. Therefore, at a minimum, this issue is simply not a matter of which may be disposed of by way of summary judgment.

By way of example, plaintiff notes that during the course of his treatment with Dr. John Sledge, Mr. Gill was seen by Dr. Sledge on December 10, 2012 and requested on an emergent basis ordered an MRI of his low back (See Dr. John Sledge Report dated December 10, 2012 attached hereto as Exhibit "A"). On the same date, plaintiff's counsel received an emergency phone call from Holly with Dr. Sledge's office, requesting approval of the emergency MRI due to Dr. Sledge's office not being able to get in touch with Coastal's representative for approval. Plaintiff's counsel approved the lumbar MRI and it was performed at Envision Imaging on the same date. On December 12, 2012, Coastal received a request for authorization of an office visit to review tests, including the emergency MRI, which was denied. Additionally, on December 13, 2012, Coastal received a call from Dr. Sledge's in which Coastal was advised that Mr. Gill continued complaints of pain in his knee and had experienced "anatomical changes" for which Dr. Sledge had ordered an EMG/NCV with Dr. Daniel Hodges. On December 19, 2012, Coastal additionally received a request for approval of a thoracic spine, sacrum and lumbar plexus MRIs which was scheduled for December 21, 2012, along with an office visit with Dr. James Domingue on January 7, 2013, which were all

denied. On January 15, 2013, Coastal received Dr. Domingue's January 7, 2013 report wherein he was requesting that a second EMG/NCV be conducted, which again was denied. During this time, although CRPS was a part of Dr. Sledge's differential diagnosis, a conclusive diagnosis of CRPS had not yet been made. Accordingly, Coastal's approval of the requested of the MRI and diagnostic testing was critical to Dr. Sledge's treatment and diagnosis of plaintiff. However, Dr. Sledge received absolutely no response from Coastal's representative, Mr. Charlie Johnson, to this request for additional diagnostic testing. Therefore, Dr. Sledge made another request for this diagnostic testing on January 31, 2013. Although Mr. Johnson did respond to this request on February 1, 2013, that response came in the form of a denial. The justification for the denial was a pending IME which had been scheduled by Coastal for February 27, 2013.

Dr. Sledge has testified that this significant delay in approval of the requested diagnostic testing directly prejudiced his ability to make an ultimate diagnosis as to plaintiff's condition. Indeed, a conclusive diagnosis of CRPS was not made until April 2, 2013, nearly four (4) months after Dr. Sledge's first request on December 10, 2012 for approval of MRI testing.

Plaintiff submits that this course of events alone is sufficient to justify a trier of facts finding of arbitrary, capricious and bad faith conduct on the part of Coastal which would justify the imposition of bad faith penalties, sanctions and attorneys fees in this matter.

In addition, as conceded by Coastal itself, Coastal refused to approve an SI Joint injection recommended by plaintiff's physicians on December 20, 2013 and further refused to approve a recent request to have plaintiff return to the Cleveland Clinic for additional treatment at the hands of Dr. Stanton-Hicks, the foremost specialists in the United States with respect to CRPS conditions. Additionally, in their depositions, taken well before the retention of defndnasts IME physicians/experts and the issuance of their opinions, Dr. Glenn Bricken and Dr. Samuel Alianell in their depositions taken on October 23, 2014 and October 24, 2014, respectively, testified that they

felt that Mr. Gill needed to return to The Chronic Pain Recovery Center in the Woodlands for additional medical treatment and assessment, and so that Gill could make additional recovery by participating in a multi-disciplinary approach to his treatment, (See deposition of Dr. Glenn Bricken, pages 46 , 47 and page 63; and deposition of Dr. Samuel Alianell , pages 47, 48, 116 , (see relevant deposition excerpts, attached hereto and identifies as Ex. B and C). Coastal was fully aware of the recommendations for inpatient and outpatient medical treatment that the various treating physicians were recommending and did nothing to approve OT, PT or psychological treatment for plaintiff either at home, in Lafayette or Houston.

On January 29, 2015 Coastal received a prescription from Dr. Gammel that stated "Refer to Chronic Pain Recovery Center for multi disciplinary mgmt; CPRS I; R LE." (Dr. Gammel's prescription dated 1/29/15, attached to Defendants MSJ as Ex. 20.) It was accompanied by a report from Dr. Gammel of the same date that included the statement, "... needs comprehensive care visit." (Dr. Gammel's office note, 1/29/15, defendants Ex. 21.) . These requests for Gill to return to the CPRC in The Woodlands were ignored by Coastal, with no reasons given.

Following the medical depositions, of Drs. Bricken, Alianell and Gammal, Coastal Drilling made no effort to get Mr. Gill the (inpatient or outpatient) medical treatment that was recommended by these three (3) treating physicians in their reports and depositions.

It was only after Coastal's counsel, requested and was granted a continuance of the February 2015 trial, that Coastal then hired its "IME" experts (namely Dr. Karen Ostenberg and Dr. Kevin Bianchini) to "advise" Coastal on the "medical necessity and advisability of sending Gill back to the CPRC for treatment". As expected, both experts "opined that it was not necessary or advisable for Gill to return to the CPRC for treatment".

Coastal cites numerous cases for the basis of its Motion arguing that it is "entitled to investigate a claim for maintenance and cure before tendering any payments to the seaman" and that its refusal to pay for the seaman's cure was "reasonable" given the "existing circumstances". Plaintiff does not dispute that Coastal has a right to investigate a seaman's claims, but Coastal is not entitled to refuse medical treatment based on the recommendations of the plaintiffs treating physicians prior to retaining experts for trial and prior to any medical examination of the plaintiff and only after the Court has granted Coastal a reprieve from the previously set February trial date.....

That said, there clearly exists a question of fact for the Court to decide at trial, once all the medical testimony, reports and records, are in the record , as to whether Mr. Gill's treating physicians recommendations that Gill return to the CPRC was necessary and whether Coastal's refusal to approve this return visit and medical treatment, as well as Coastal's refusal to approve any of the requested local OT/PT/Psychological therapy that were also recommenced , constitute arbitrary and capricious behavior to warrant and award of punitive damages.

**LAW AND ARGUMENT**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552-53, 91 L. Ed. 2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. See *Id.* at 248, 106 S. Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the

entry of summary judgment. See Id. at 247-48, 106 S. Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. See id.; see also *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F. Supp. 691, 693 (S.D. Tex. 1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. See *Anderson*, 477 U.S. at 255, 106 S. Ct. at 2513.

Procedurally, the party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323, 106 S. Ct. at 2553; see also FED. R. CIV. P. 56(c). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. See *Matsushita*, 475 U.S. at 585-87, 106 S. Ct. at 1355-56; *Wise v. E.I. DuPont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The Court must accept the evidence of the nonmoving party and draw all justifiable inferences in favor of that party. See *Matsushita*, 475 U.S. at 585-87, 106 S. Ct. at 1355-56. However, to meet its burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts," but instead, must "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 586-87, 106 S. Ct. at 1355-56 (quoting FED. R. CIV. P. 56(e)).

In sum, it simply cannot be similarly held as a matter of law that the conduct of Coastal and its representatives in the handling of its maintenance and cure obligation to plaintiff was not arbitrary, capricious and/or in bad faith such that an award of sanctions, penalties and/or attorneys fees would be warranted in this matter. In any event, the question of whether a Jones Act employer's handling of its maintenance and cure obligation was arbitrary, capricious or in bad faith is an issue to be

decided by the trier of fact following a trial on the merits. See *Tullos v. Resource Drilling*, 750 F.2d 380 (5th Cir. 1985). This is not a matter that is appropriate for summary judgment.

For the foregoing reasons, the Motion of Coastal to dismiss plaintiff's claims for unreasonable, arbitrary and capricious failure to pay maintenance and/or cure benefits should be denied in its entirety.

Respectfully submitted,

JOSEPH F. GAAR, JR., APLC

BY: /s/ Joseph F. Gaar, Jr.
JOSEPH F. GAAR, JR. (#16927)
JASON M. WELBORN (#26548)
WILLARD P. SCHIEFFLER (#25862)
LUCAS COLLIGAN (#31671)
JACOB H. HARGETT (#32490)
617 S. Buchanan St. (70501)
P.O. Drawer 2069
Lafayette, LA 70502
Telephone: (337) 233-3185
Facsimile: (337) 233-0690
**Attorneys for plaintiff,**
**BENJAMIN GILL**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was forwarded to all counsel of record by the Court's ECF system.

Lafayette, Louisiana, this 13th day of April, 2015.

S/ JOSEPH F. GAAR, JR.
JOSEPH F. GAAR, JR.